IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MICHAEL TOMLINSON,                    §
                                      §
              Plaintiff,              §
                                      §
V.                                    §    NO. 4:21-CV-1388-O
                                      §
PARKER COUNTY JAIL, ET AL.,           §
                                      §
              Defendants.             §

## ORDER GRANTING MOTIONS TO DISMISS

Came on for consideration the motion of Defendant Sheriff Russ Authier ("Sheriff"), and

the motion of Defendants Warden Ron King ("Warden"), Assistant Warden J. Harris ("Assistant

Warden"), and Judy Bolan, R.N.[1] ("Nurse"), to dismiss. Having considered the motions, the

response, the consolidated reply, the record, and applicable authorities, the Court finds that the

motions should be **GRANTED**.

### I.      Plaintiff's Claims

The operative pleading is Plaintiff's amended complaint filed February 7, 2022. In it, he

asserts claims against Sheriff, Warden, Assistant Warden, and Nurse. ECF No. 5. The Court has

dismissed the claims against Graham Quisenberry, a state district judge. ECF Nos. 9, 11.

Plaintiff alleges that Sheriff (1) failed to ensure that written grievance procedures were

followed, blocking Plaintiff's access to the courts, (2) refused to provide prisoners ready access to

a functional law library or provide materials, such as paper and pens, to construct legal filings, and

---

[1] The name is spelled "Bowlen" in the amended complaint.

(3) ignored Plaintiff's reports of medical staff misconduct.

Plaintiff alleges that Warden failed: (1) to ensure written grievance procedures were followed and claims investigated, (2) to provide access to a functional law library, (3) to provide materials to construct legal filings, and, (4) Warden ignored Plaintiff's complaints about refusal of medical staff to provide treatment to Plaintiff.

Plaintiff alleges that Assistant Warden verbally assaulted him then helped drag him to a nearby holding cell, shoving him against a wall and injuring his left shoulder. Further, Assistant Warden placed Plaintiff in a punitive segregation cell that had raw sewage in the floor. Plaintiff alleges that he slipped and fell, injuring himself.

Plaintiff alleges that Nurse routinely rejects his written requests for services and denies treatment for his established chronic conditions. In addition, she refused to diagnose Plaintiff's injuries for the alleged assault by the Assistant Warden and slip and fall in the cell. And, she refused to provide Plaintiff copies of his medical records.

Plaintiff seeks to recover $1,000,000 from Parker County and LaSalle Corrections, which are not named as parties to this action.[2]

## II.    Grounds of the Motions

Defendants maintain that Plaintiff has failed to allege sufficient facts to state plausible claims against each of them. In addition, Sheriff argues that Plaintiff has not pleaded sufficient facts to overcome his entitlement to qualified immunity.

---

[2] It appears that LaSalle Corrections employs Warden, Assistant Warden, and Nurse. ECF 5 at 3. Plaintiff does not plead any facts to allege a plausible claim against LaSalle.

### III.   Applicable Legal Standards

**A.      Pleading**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. *Id.*, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." *Anderson v. U.S. Dep't of Housing & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." *Id.* at 528–29. Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8. *Iqbal*, 556 U.S. at 676; *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

**B.      Entity and Supervisor Liability Under § 1983**

The law is clearly established that the doctrine of *respondeat superior* does not apply to § 1983 actions. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). The misconduct of a subordinate must be affirmatively linked to the action or inaction of the supervisor. *Southard v. Tex. Bd. Of Crim. Justice*, 114 F.3d 539, 554 (5th Cir. 1997). A supervisor may be liable under § 1983 only if he or she, by action or inaction, demonstrates deliberate indifference to a plaintiff's constitutionally protected rights. *Id.* at 551. The deliberate indifference standard allows the court to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversights. *Id.* (quotations and citations omitted).

Liability may be imposed against a local government only if the governmental body itself

subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official policy caused their injury. *Monell*, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular constitutional violation alleged. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a governmental policymaker. *Tuttle*, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivations.) Thus, to establish governmental liability requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued *en banc* in response to a motion for rehearing in *Bennett v. City of Slidell*:

> 1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the [entity's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [entity] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [entity] policy. Actual or constructive knowledge of such custom must be attributable to the

5

governing body . . . or to an official to whom that body had delegated policy-making authority.

Actions of officers or employees of [an entity] do not render the [entity] liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984)(*per curiam*).

## C.      Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, courts consider whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, a court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the

defense. *Kovacic v. Villareal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. *Id.* at 552. Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

### D.   Rights of Pretrial Detainees

The constitutional rights of a pretrial detainee flow from the procedural and substantive due process guarantees of the Fourteenth Amendment. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). Under the due process clause, a detainee may not be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Punishment includes deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). It also includes the use of excessive force that amounts to punishment. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that an individual defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That is, the employee "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Rather, the plaintiff must show that the defendant acted with subjective deliberate indifference and that injuries resulted. *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000); *Hare v. City of Corinth*, 74 F.3d 633, 648-49 (5th Cir. 1996)(*en banc*)(discussing *Farmer*). Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

As for a pretrial detainee's excessive force claim, the Supreme Court has determined that an objective standard applies. *Kingsley*, 576 U.S. at 397. That is, the pretrial detainee need only show that the force purposely or knowingly used against him was objectively unreasonable. *Id.* The court makes this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not in hindsight. *Id.* Further, the court must defer to policies and practices that in the judgment of jail officials are needed to preserve order and discipline and maintain institutional security. *Id.*; *Turner v. Safley*, 482 U.S. 78, 89 (1987) (jail administrators, and not the courts, are to make the difficult judgments concerning institutional operations).

> Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.

*Bell*, 441 U.S. at 540.

Factors that may bear on the reasonableness of the force used include

the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. It is not necessary for a pretrial detainee to suffer a significant injury, but he must have suffered at least some injury that is more than *de minimis*. *See Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

A pretrial detainee's claims against a governmental entity are characterized as "conditions of confinement" or "episodic act or omission" claims. *Garza*, 922 F.3d at 632. In a conditions of confinement claim, the plaintiff attacks the general condition, practices, rules or restrictions of pretrial confinement. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). To succeed on such a claim, the plaintiff must prove: (1) a rule or restriction, an intended condition or practice, or a *de facto* policy as evidenced by sufficiently extended or pervasive acts of jail officials, (2) not reasonably related to a legitimate governmental objective, i.e., arbitrary or purposeless, (3) that caused a violation of his constitutional rights. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011). He must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. As the Fifth Circuit has noted:

> [I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infections, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks. Allegations of insufficient funding are similarly unavailing.

*Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009). "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Id.* at 452.

In an "episodic act or omission claim," the plaintiff complains of a specific act or omission by a state actor. *Scott*, 114 F.3d at 53. To establish governmental liability, the plaintiff must show

10

that (1) a governmental employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference, and (2) this violation resulted from a governmental policy or custom adopted and maintained with objective deliberate indifference. *Garza*, 922 F.3d at 634; *Hare*, 74 F.3d at 649 n.4.

### IV.    Analysis

**A.    Sheriff**

Plaintiff does not state whether he is suing Sheriff in his individual or official capacity. An official capacity claim is merely another way of pleading an action against the entity for which the individual defendant is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Given that he seeks relief from Parker County, it appears that he intends to assert official capacity claims. ECF No. 5 at 7.[3] *See United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 402–03 (5th Cir. 2000); *Harmon v. Dallas Cnty.*, 294 F. Supp. 3d 548, 569 n.6 (N.D. Tex. 2018). Whether individual or official capacity is intended, Plaintiff has not pleaded a claim.

Plaintiff has not pleaded any facts to support personal involvement by Sheriff or a causal connection between an act of Sheriff and any constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Failure to respond to Plaintiff's grievances does not establish personal involvement. *Keys v. United States*, No. 3:17-CV-2490-N-BH, 2020 WL 2753143, at *4 (N.D. Tex. Apr. 20, 2020), *adopted*, 2020 WL 2745604 (N.D. Tex. May 27, 2020). And, an inmate has no protected liberty interest in processing prison grievances in any event. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007). A prison system is

---

[3] The page reference is to "Page __ of __" at the top right portion of the document.

not required to establish grievance procedures, and the failure to establish or adhere to a grievance procedure does not rise to the level of an actionable constitutional claim. 42 U.S.C. § 1997e(b); *Duquesne v. Edge*, No. 3:20-CV-700-N-BN, 2020 WL 2363442, at *2 (N.D. Tex. Mar. 27, 2020), *adopted*, 2020 WL 2334089 (N.D. Tex. May 8, 2020).

Plaintiff generally mentions that staff are blocking his access to the courts and that he is being denied adequate medical care. Again, he does not allege any facts showing Sheriff's personal involvement. Nor does he allege any facts sufficient to show any constitutional violation, much less an official policy or persistent widespread unconstitutional practice. His conclusory allegations are not enough. *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 643 (5th Cir. 2014).

**B.     Warden**

Plaintiff generally alleges that Warden failed to execute his duties by refusing to ensure written grievance procedures were followed and impartial investigations conducted. ECF No. 5 at 4. For the reasons discussed, *supra*, Plaintiff does not have a constitutional right to have grievances processed.

Plaintiff also complains about lack of access to a law library and failure to provide materials, such as paper, pens, carbon paper, and postage, which he says effectively block his access to the courts. ECF No. 5 at 4. Although prisoners generally have a right to reasonable access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), they do not have an abstract, freestanding right to a law library or legal assistance. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, the touchstone is meaningful access to the courts. *Id.* In order to prevail on a denial of access claim, a prisoner must establish that he has been prejudiced in connection with some identifiable legal proceeding. *Brinson v. McKeeman*, 992 F. Supp. 897, 911 (W.D. Tex. 1997). The failure to allege

an actual injury is fatal to a denial of access claim. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996); *Patterson v. Harris Cnty. Jail*, 358 F. App'x 491, 492 (5th Cir. 2009). Plaintiff's allegations do not meet the test.

Finally, with regard to Warden, Plaintiff alleges that Warden ignored Plaintiff's reports of "medical staff misconduct by refusing to provide treatment of the Plaintiff's chronic medical conditions." ECF No. 5 at 4. To the extent Plaintiff is complaining of the failure to follow policy, internal rules and regulations do not create federally protected rights. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). Plaintiff has not pleaded any facts to show that Warden was responsible for running the medical unit or dispensing medications. *Brown v. St. Landry Parish Sheriff's Dep't*, 298 F. Supp. 3d 879, 884 (W.D. La. 2018). Nor has he pleaded facts to show that Warden was deliberately indifferent to his serious medical needs. *Farmer*, 511 U.S. at 838; *Doe v. Robertson*, 751 F.3d 383, 390 (5th Cir. 2014). Warden is not vicariously liable for the acts of his staff. *Tuttle*, 471 U.S. at 818.

## C.     Assistant Warden

Plaintiff first complains that Assistant Warden verbally assaulted him by calling him a name. ECF No. 5 at 4. The law is clear that use of words, no matter how violent, does not give rise to a § 1983 claim. *Robertson v. City of Plano*, 70 F.3d 21, 24 (5th Cir. 1995); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

Plaintiff alleges that after he used the same language, Assistant Warden and another officer dragged him to a nearby holding cell, injuring his left shoulder. ECF No. 5 at 4. Conclusory allegations do not support an excessive force claim. *Iqbal*, 556 U.S. at 678. Rather, a plaintiff must give sufficient detail about the level of force used to show objective unreasonableness. *Emesowum*

13

*v. Cruz*, 756 F. App'x 374, 381 (5th Cir. 2018). He must allege an injury, which resulted directly and only from the use of force that was clearly excessive to the need, the excessiveness of which was objectively unreasonable. *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018). The injury must be more than *de minimis*. *Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 629 (N.D. Tex. 2019). Plaintiff has failed to plead this claim sufficiently.

Plaintiff alleges that thereafter Assistant Warden, without due process, placed him in a punitive segregation cell that was in "the most deplorable condition having raw sewage in the floor." ECF No. 5 at 5. He says the wet condition of the floor caused him to fall, injuring his neck, low back, and left shoulder. *Id.* He has not pleaded any facts to show that Assistant Warden was aware of the condition of the cell or that Plaintiff slipped and fell. It appears that Plaintiff spent one night in the cell. His allegations are insufficient to raise a claim. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998); *Taylor v. Stevens*, No. 5:14-CV-149-C, 2017 WL 11507190, at *8 (N.D. Tex. Jan. 5, 2017); *Williams v. Gusman,* No. Civ. A. 15-96, 2015 WL 5970424, at *3 (E.D. La. Oct. 14, 2015). And, because he has not raised a constitutional claim in this regard, any claim of retaliation must likewise fail. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Cecil v. Calhoun*, 71 F. App'x 321, 323 (5th Cir. 2003).

**D.    Nurse**

Plaintiff alleges that Nurse is "deliberately indifferent to my serious medical needs, routinely rejecting my written requests for services, denying treatment for my established chronic conditions." ECF No. 5 at 5. He further alleges that Nurse refuses to diagnose his injuries for the alleged assault and slip and fall on September 14, 2021. He refers to grievances that have disappeared without response and sick call requests getting thrown away. He alleges that on

14

January 12, 2022, he was having chest pain, shortness of breath, headache, and dizziness, but was told by another officer to put in a sick call request when he used the emergency intercom. He alleges that his life is in danger and that saving money seems to be the only real concern. Finally, he alleges that Nurse informed him that his medical records could only be obtained by his lawyer through a subpoena. *Id.* at 5–6.

Plaintiff has not alleged anything more than conclusory allegations as to Nurse, which are insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Thompson*, 709 F.2d at 382. He has not alleged that Nurse was aware of and subjectively disregarded a serious risk to Plaintiff's health or safety. *Farmer*, 511 U.S. at 837. He does not point to any injury he has suffered as a result of deliberate indifference to his serious medical needs. Mere disagreement with medical treatment does not state a constitutional claim. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). And, as stated, failure to follow procedural guidelines, if that is what Plaintiff is alleging, does not implicate constitutional liability. *Gagne v. City of Galveston*, 805 F.2d 558, 559–60 (5th Cir. 1986).

## V.     Conclusion

The motions to dismiss are **GRANTED** and Plaintiff's claims in this action are **DISMISSED**.

SO ORDERED this 6th day of September, 2022.

Reed O'Connor
UNITED STATES DISTRICT JUDGE